IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CALEB ANDERSON TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:16-cv-02647-STA-jay |
| | ) |
| WTSP OFFICER MARCUS JONES, | ) |
| WTSP SERGEANT BILLY | ) |
| WASHINGTON, and TENNESSEE | ) |
| DEPARTMENT OF CORRECTION, | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff initiated this action *pro se* pursuant to 42 U.S.C. § 1983, for Defendants' alleged excessive force while Plaintiff was in state custody on September 11, 2015. Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 55.) The Motion relies solely on Plaintiff's failure to properly exhaust his administrative remedies, as mandated by the PLRA, prior to filing suit. The Court held a Hearing on the Motion on June 7, 2019. (ECF No. 88.) During the Hearing, the Court ordered Defendants to produce Plaintiff's medical records for in camera review.[1] Having considered the parties' arguments, the record, and Plaintiff's medical records, the Court finds that there remains a genuine issue of fact as to the availability of the administrative grievance process. Therefore, Defendants' Motion is **DENIED**.

---

[1] Plaintiff's medical and mental health records are sealed and docketed as ECF No. 91.

BACKGROUND

Between September 11, 2015, and September 16, 2015, Plaintiff was an inmate with the Tennessee Department of Correction and was housed at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee. (ECF Nos. 1 and 56.)

Plaintiff alleges that on September 11, 2015, Defendants Marcus Jones and Billy Washington, both WTSP employees, used excessive force in their attempt to subdue Plaintiff in his cell. (ECF No. 1.) Plaintiff's testimony and medical records establish that he was immediately taken to the infirmary because his right arm was injured during the altercation. (ECF No. 91 at 4, 6.) Medical personnel documented that Plaintiff's difficulty moving his arm was consistent with trauma. (*Id.* at 6, 8.) An x-ray was taken, and Plaintiff was provided with a sling and narcotics to treat his pain. (*Id.* at 5, 8.)

While at WTSP, doctors ordered and examined Plaintiff's x-rays and ascertained that Plaintiff suffered from an "acute displaced fracture of distal humeral diaphysis" (*Id.* at 12), meaning that the bottom portion of Plaintiff's upper-arm bone snapped into two or more pieces. Plaintiff continued to complain of great physical pain, was given narcotics to treat that pain, and experienced difficulty moving his arm. (*See id.* at 13-19.) WTSP medical providers requested an orthopedic consultation and surgery evaluation. (*Id.* at 24.) Pursuant to their requests, the process through which Plaintiff was to be transferred to a special needs facility was undertaken.

Plaintiff testified that at some point during the five days following the incident— throughout which, he was in and out of the infirmary, under the influence of prescription pain medication, and in great physical discomfort—Plaintiff asked Corporal Jones (different than Defendant Jones) for assistance with writing and filing a grievance. (ECF No. 88.) According to Plaintiff, Jones refused to help, stating that he (1) did not have time and (2) had to wait until all

of the transferring process was complete. (*Id.*) Plaintiff also testified that he asked fellow inmates for assistance with writing the grievance, but they refused. (*Id.*) Plaintiff stated that during this time, his arm injury rendered him physically unable to write a grievance. (*Id.*; ECF Nos. 61, 67, and 72.) Plaintiff was then transferred to Lois M. DeBerry Special Needs Facility ("DSNF") in Nashville, Tennessee, where Plaintiff was scheduled to have an orthopedic consultation. (ECF No. 88; ECF No. 91 at 32.)

Plaintiff arrived to DSNF on September 16, 2015, five days after he was injured. (ECF No. 88; ECF No. 91 at 33.) Plaintiff testified that his priority at DSNF was treatment for his arm. (ECF No. 88.) Over the next three-and-a-half weeks, Plaintiff's healing was monitored as medical personnel discussed the treatment plan and likelihood of surgery. (ECF No. 91 at 35-55.) Plaintiff's records at DSNF indicate that Plaintiff consistently attributed his injury to an altercation with correctional officers. (*See, e.g.*, *id.* at 36.) Medical personnel documented Plaintiff's persistent severe pain, narcotic pain treatment, and sling utilization. (*Id.* at 36, 40, 44, and 53.) Ultimately, it was determined that Plaintiff's arm was not healing properly, and surgery was recommended. (*Id.* at 47, 51.)

Plaintiff testified that during the first week of October, he spoke with a DSNF internal affairs officer about the possibility of filing a grievance related to the September 11, 2015, incident. (ECF No. 88.) The officer advised Plaintiff to file. (*Id.*) Thus, on October 6, 2015, while still at DSNF, Plaintiff—his arm now healed enough to allow him to write—filed a grievance against Defendants. (*Id.*; ECF No. 56.) The grievance was denied on October 12, 2015, as "Inappropriate – Non-grievable" because it was filed "past 7 days of occurance [sic]." (ECF No. 1-4 at 4.) Plaintiff testified that the grievance's denial precluded him from having an opportunity to be heard. (ECF No. 88.)

3

Thereafter, Plaintiff filed this suit on the basis of Defendants' excessive force, in violation of the Eighth Amendment. (ECF No. 1.) Defendants now contend that they are entitled to summary judgment solely because Plaintiff failed to properly exhaust his administrative remedies. (ECF Nos. 55 and 56.) In opposition, Plaintiff asks the Court to consider his inability to file. (ECF Nos. 61, 67, 72, and 88.)

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The critical question here is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

"The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted). "Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x. 492, 495-96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts. [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotations and

4

citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp.*, 477 U.S. at 322-23).

## ANALYSIS

Plaintiff filed suit pursuant to 42 U.S.C. § 1983 for Defendants' alleged excessive force, in violation of the Eighth Amendment. (ECF No. 1.) Because the alleged incident happened while Plaintiff was imprisoned, Plaintiff is subject to the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997.

The PLRA contains an exhaustion clause, mandating that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). Thus, exhaustion of available administrative remedies is a mandatory prerequisite to filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA . . . .'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216).

Here, Defendants assert the affirmative defense that Plaintiff failed to exhaust his administrative remedies. (ECF No. 56.) Defendants do not dispute that Plaintiff filed a grievance. (*See* ECF No. 56 at 4.) Instead, Defendants contend that because Plaintiff did not file the grievance until October 6, 2015—twenty-five days after the occurrence—Plaintiff cannot prevail as a matter of law.

5

The PLRA mandates "proper" exhaustion, requiring a prisoner to timely file his grievance. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Tennessee Department of Corrections ("TDOC") Administrative Policy and Procedure 501.01 requires an inmate to file his grievance within seven (7) days of the occurrence giving rise to the grievance.[2] Thus, pursuant to the PLRA, a TDOC prisoner must adhere to the seven-day limitation set forth in the institutional grievance policy. *See Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011); *Woodford*, 548 U.S. at 90-91; *Surles*, 678 F.3d at 455.

Here, Defendants have established that Plaintiff failed to file a grievance within the seven days required by the TDOC institutional grievance policy and, accordingly, the PLRA. Plaintiff concedes that he knew of the seven-day requirement and did not comply. (ECF Nos. 61, 67, 56, 88.) Defendants assert that this being established entitles them to judgment as a matter of law.

Plaintiff, proceeding *pro se*, however, responded that he was "unable" to file. (ECF Nos. 61, 67, and 72.) The Court construes Plaintiff's argument as raising an issue as to the availability of the administrative grievance process. This argument warrants the Court's attention. The Supreme Court considered this issue in *Ross v. Blake*, 136 S. Ct. 1850 (2016).

In *Ross v. Blake*, the Supreme Court explicitly recognized that there is but one exception to the exhaustion requirement: "A prisoner need not exhaust [administrative] remedies if they are not 'available.'" 136 S. Ct. at 1855. An available remedy is one that "is '"capable of use for the accomplishment of a purpose," and that which "is accessible or may be obtained."'" *Id.* (quoting

---

[2] The Court takes judicial notice of the TDOC policy on inmate grievances, which is available at https://www.tn.gov/content/dam/tn/correction/documents/501-01.pdf.

6

*Booth v. Churner*, 532 U.S. 731, 737-38 (2001) (quoting Webster's Third New International Dictionary 150 (1993))). In accordance with this definition and in light of prison grievance systems, the Court outlined three specific circumstances in which such an administrative remedy is unavailable:

> First . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. . . . And finally, [the administrative process is rendered unavailable] when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Id.* at 1859-60. The Court held that, irrespective of any "special circumstances," unavailability is the only exception to an inmate's obligation to exhaust. *Id.* at 1856.

It is now for the Court to determine whether there remains a genuine issue as to the availability of the administrative grievance procedure. Plaintiff contends that he was "unable to file the grievance" because (1) his right arm, the one with which he writes,[3] was broken and (2) he was unable to receive help with writing and filing the grievance. (ECF Nos. 61, 67, 72, and 88.)

Defendants have only briefly addressed the issue of availability. (*See* ECF No. 69 at 4.) Defendants assert that "Plaintiff has cited no case law showing that a prisoner may be excused because he did not receive help in filing his grievance." (*Id.*) Further, according to Defendants, Plaintiff has failed to provide any facts indicating that "any officers were unable or unwilling to

---

[3] Plaintiff testified that he did not write anything until October—well after the expiration of the seven-day period during which to file a grievance—because he was unable, given the condition of his arm. The Court notes that Plaintiff signed his name upon his initial infirmary visit on September 11, 2015, and again upon his transfer to DSNF on September 16, 2015. (ECF No. 91 at 11, 34.) Notably, Plaintiff's signatures on those document are barely—if at all—legible. (*See id.*)

7

provide relief to [Plaintiff] or other inmates." (*Id.*)  Thus, according to Defendants, Plaintiff has not shown that administrative remedies were unavailable, in accordance with *Ross*. (*Id.*)  In light of the entire record, including the Hearing testimony, however, the Court is skeptical of such an assertion.

"'[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints.'" *Surles*, 678 F.3d at 455 (quoting *Jones*, 549 U.S. at 216).  Instead, a plaintiff's failure to exhaust "must be established by the defendants." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).  Accordingly, Defendants bore the burden of proof on exhaustion.  And because Defendant's bear the burden to prove the affirmative defense of Plaintiff's failure to exhaust at trial, Defendants' "'initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is *so powerful* that no reasonable jury would be free to disbelieve it."'" *Surles*, 678 F.3d at 455-56 (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000))) (emphasis added).  "Summary judgment is appropriate only if defendants establish the absence of a genuine dispute as to *any material fact* regarding non-exhaustion." *Surles*, 678 F.3d at 455 (emphasis added).

Defendants have not established that the administrative grievance process was available, and Plaintiff has cast doubt as to its availability.  At this stage in the proceedings, the Court must view the record in light most favorable to Plaintiff.  A reasonable juror *could* find that: (1) Defendants broke Plaintiff's arm, which required treatment (including recommended surgery) and Plaintiff's consistent use of narcotic pain medication; (2) Defendant Jones's and Defendant Washington's actions rendered Plaintiff physically unable to write a grievance within seven

8

days; (3) a prison official refused to assist Plaintiff in drafting the grievance; (4) the same prison official told Plaintiff that the transfer process had to be complete before he could assist Plaintiff with the grievance; and (5) WTSP transferred Plaintiff to another facility days after the injury, but prior to the grievance filing period's expiration, thereby complicating the process. Plaintiff's allegations, when taken as a whole, could result in a finding that the prison officials' actions amounted to "machination, misrepresentation, or intimidation." *See Ross*, 136 S. Ct. at 1860. Accordingly, a reasonable juror could find that these maneuvers rendered the administrative grievance procedure unavailable to Plaintiff. Ultimately, that is a determination for the trier of fact.

Because Plaintiff has raised a genuine issue of material fact as to the availability of the grievance process, Defendants' Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: August 7, 2019.